IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **William A. Randolph, Inc., an Illinois corporation,** | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 08 CV 2257 |
| **D & BR Building Systems, Inc., a Texas corporation,** | ) ) ) ) | Judge Gottschall |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTIONS TO TRANSFER VENUE**

Plaintiff, William A. Randolph, Inc., an Illinois corporation ("Randolph") by and through it attorneys, submits its Memorandum in Opposition to Defendant D & BR Building Systems, Inc.'s, ("D & BR"), Motions To Transfer Venue, and states as follows:

**I.    Introduction**

This case involves the breach of two subcontracts between an Illinois general contractor and a Texas subcontractor for the installation of structural steel on a Wal-Mart and Sam's Club construction project in Wisconsin. D & BR has filed two related motions requesting this Court to find that venue is improper in this district, or if venue is proper to transfer the case to the Western District of Wisconsin. Randolph's Memorandum addresses both motions, and argues that (i) venue is proper in the Northern District of Illinois, and (ii) this district is a more appropriate venue than the Western District of Wisconsin. Randolph negotiated the subcontracts at issue from Illinois, and Randolph is headquartered in Gurnee, Illinois. D & BR knew this when it solicited Randolph and entered into the subcontracts, which are governed by Illinois law. Further,

Randolph's documents relating to its case are located in this district, as are various witnesses and the employees of Randolph who will testify during discovery and at trial. For these reasons, venue is proper in this district, should remain in this district, and D & BR's motions should be denied.

## II.  Argument

Randolph filed this lawsuit in the Northern District of Illinois because it is a resident of this district, its employees and records are located in this district, and because the negotiations between it and D & BR relating to the subcontracts at issue occurred in this district. Although D & BR seeks a change of venue, it does not ask the Court to dismiss the complaint for lack of personal jurisdiction. Rather, D & BR argues that venue is improper in this district under 28 U.S.C. § 1391(a)(3) for lack of personal jurisdiction, and requests a change of venue pursuant to 28 U.S.C. § 1404(a). D & BR does not assert that venue is improper under 28 U.S.C. § 1406.

### A.  This Court Has Specific Personal Jurisdiction Over D & BR.

D & BR's arguments regarding personal jurisdiction miss the mark for two reasons. First, D & BR has established sufficient contacts with this district in connection with the underlying subcontracts to bring itself within the personal jurisdiction of this Court. Second, a personal jurisdiction analysis is not required here. Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the

       time the action is commenced, if there is no district in which the action
       may otherwise be brought.

28 U.S.C. § 1391(a). According to the plain language of § 1391(a)(3), a personal jurisdiction analysis is only necessary to determine venue "if there is no district in which the action may otherwise be brought." *Id*. Neither party denies that Randolph's action could have been brought in the Western District of Wisconsin, and therefore § 1391(a)(3) is inapplicable. Regardless, because D & BR has raised the issue of personal jurisdiction, Randolph will address it accordingly.

1.     *Standard For Personal Jurisdiction*

      As the plaintiff, Randolph has the burden of establishing personal jurisdiction over the defendant. *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970 (N.D. Ill. Nov. 1, 2002)(citation omitted). The allegations in Randolph's complaint are assumed to be true unless controverted by the Defendant's affidavit, and any factual conflicts are resolved in favor of Randolph. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded by statute on other grounds*.

      Illinois law allows for in personam jurisdiction over a party to the extent allowed by the due process clause of the federal Constitution. *See* 735 ILCS § 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). In order to satisfy federal due process standards, the defendant must have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)(citation omitted). These minimum contacts must be such that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471

3

U.S. 462, 475, 105 S.Ct. 2174 (1985)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958)).

2.   *General Jurisdiction.*

Personal jurisdiction may be either specific or general. *Hyatt Int'l Corp.*, 302 F.3d at 713. The jurisdiction is general if the defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868 (1984), and the contacts are "so extensive as to be tantamount to [the defendant] being constructively present in the state." *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).

D & BR argues that it is not subject to general personal jurisdiction in Illinois. (*See* Mem., pp. 2-3). In addition to its contacts with this forum associated with Randolph's claim, D & BR admits to having three other projects in Illinois. (*See id.*; Ricketts Affidavit, ¶ 6). Despite this, D & BR claims it "has not been substantially, continuously and systematically in business in Illinois[,]" because these projects allegedly "represent 2.75% of DEFENDANT's total sales since March 10, 2006." (*Id.*; Mem., p. 3). D & BR does not provide any other information regarding these three projects, and Randolph does not have additional information on D & BR's contacts with Illinois outside of the issues in this case.

3.   *Personal Jurisdiction.*

General personal jurisdiction, however, is not dispositive of this matter. A defendant will establish specific personal jurisdiction if as a result of its minimum contacts, it could "reasonably anticipate being haled into court" in the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

The plaintiff's cause of action must "arise out of" or be "related to" the minimum contacts with the forum state. *See Hyatt Int'l Corp.*, 302 F.3d at 713 (citation omitted). Also, requiring the defendant to litigate in Illinois must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026 (1987).

Randolph asserts that this Court has specific personal jurisdiction over D & BR because of D & BR's contacts with this forum associated with the subcontracts at issue. Courts examining contacts relating to a contractual relationship should examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. Courts should also examine factors including "who initiated the transaction, where the negotiations were conducted, where the parties executed the contract and where the defendant would have performed the contract." *APV North America, Inc. v. Transindustrial Dev. Corp.*, No. 05 C 2396, 2006 WL 51169 at *2 (N.D. Ill. Jan. 3, 2006)(citation omitted).

Randolph's offices are located in this district in Gurnee, Illinois. (*See* Affidavit of Eric P. Handley, ¶ 2, attached hereto as Exhibit A). Randolph did not solicit D & BR to bid on the Wal-Mart projects; rather, D & BR purposefully contacted Randolph in Illinois. (*Id*., ¶ 5). Randolph conducted all negotiations for the subcontracts by telephone from its offices in Gurnee. (*Id*., ¶ 4). Each party signed the subcontracts in its home offices. The parties agreed that the subcontracts would be governed by Illinois law. (Cmplt., Ex. B, C, § 21). The situs of the construction project was in Janesville, Wisconsin, and that is where the majority of D & BR's breaches occurred. D & BR,

5

however, is required by the subcontracts to compensate Randolph for backcharges, and it has failed to send these required payments to Randolph's offices in Illinois. (*Id.*, ¶¶ 22, 25, 39-40, Ex. B & C, § 13). As such, D & BR has reached out to Illinois, and purposefully availed itself of the benefits and protections of Illinois law. These factors are sufficient for a finding of specific personal jurisdiction over D & BR. Even if no single factor relating to the subcontracts is sufficient standing alone to confer jurisdiction in Illinois, the "combined weight of the factors" establishes that D & BR has made minimum contacts with Illinois for personal jurisdiction purposes. *See Continental Bank, N.A. v. Everett*, 742 F.Supp. 508, 511 (N.D. Ill. 1990); *aff'd* 964 F.2d 701 (7th Cir. 1992); *cert. denied* 506 U.S. 1035, 113 S.Ct. 816 (1992).

**B.   Venue Is Proper In The Northern District Of Illinois.**

Randolph has chosen the Northern District of Illinois as the venue in which to address D & BR's breaches of the subcontracts. This decision is not based on the personal jurisdiction provision contained in § 1391(a)(3), however, but rather is because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* § 1391(a)(2). Regardless, the analysis is similar. The question of whether venue is proper "does not require that the majority of the events pertaining to the case took place in the forum district, and if these "contacts are 'substantial' it should make no difference that another's are more so, or the most so." *Chemical Waste Mgmt., Inc. v. Sims*, 870 F.Supp. 870, 875 (N.D. Ill. 1994)(citations omitted).

Again, all of the negotiations and pre-contract discussions regarding the subcontracts took place by telephone from Randolph's offices in Gurnee. The test for proper venue "may be satisfied by a communication to or [from] the district in which the

cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Pasulka v. Sykes*, 131 F.Supp.2d 988, 994 (N.D. Ill. 2001)(citation omitted). D & BR has also failed to pay backcharges it owes to Randolph under the subcontracts, despite Randolph's demands. (*See* Cmplt., ¶¶ 22, 25, 39-40). The failure "to make payment in a district pursuant to a contract is enough under the statute to establish venue in that district." *APV North America, Inc.*, 2006 WL 51169 at *3 (citations omitted). Finally, certain of Randolph's third-party witnesses are located in this district. Randolph utilized All Erection Company of Naperville to repair, replace, and complete D & BR's defective work. (*See* Handley Affidavit, ¶ 10). These contacts, both individually and taken as a whole, are sufficient to establish this district as a proper venue for Randolph's claims.

C.     **The Court Should Not Transfer Venue To Wisconsin.**

Despite the propriety of venue in the Northern District of Illinois, D & BR requests that the Court transfer venue to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). The decision to transfer venue is in the Court's discretion, and is based on a three-factor analysis allowing for transfer if the defendant can demonstrate "that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Chemical Waste Mgmt.,* 870 F.Supp. at 875.

The question in this analysis is the convenience of the witnesses and the interest of justice, as Randolph concedes that venue is proper in this district, and that venue and jurisdiction are also proper in the Western District of Wisconsin. The inquiry into venue

7

considers both public and private interests. *APV North America, Inc.*, 2006 WL 51169 at *4 (citations omitted). The public interests include "plaintiff's initial choice of forum, the situs of material events, ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and the convenience to the parties themselves." *Id*. It is D & BR's burden to establish that venue in the Western District of Wisconsin "is clearly more convenient" than the Northern District of Illinois. *Pasulka*, 131 F.Supp.2d at 994.

Randolph has chosen this district to bring its claims against D & BR. Randolph's headquarters are in Gurnee, Illinois. (Handley Affidavit, ¶ 2). Although the situs of the construction projects was Janesville, Wisconsin, Randolph's employees who are witnesses and have direct knowledge of the issues in this matter are located in Illinois. (*Id*., ¶ 7). All of Randolph's documents relating to the subcontracts are kept at its headquarters. (*Id*., ¶ 6). D & BR has not alleged that it retains any documents or employees in the Western District of Wisconsin, and therefore Illinois is a more convenient locale for document discovery and the plaintiff's witnesses.

Although D & BR claims that the Western District of Wisconsin is more convenient for necessary witnesses depositions, many of these witnesses have little bearing on the case. For example, D & BR argues in conclusory fashion that Randolph's claims are reliant on services and materials provided by entities located in Wisconsin. (Ricketts Affidavit, ¶ 11). Many of these entities, however, had no more than tangential involvement with D & BR's work under the subcontracts or with Randolph's damages claims. Courts "should look to the nature and quality of the witnesses' testimony with respect to the issues in the case." *Chemical Waste Mgmt*., 870 F.Supp. at 876. For

example, Linde Gas provided gas for welding on the Projects, Brown Oil provided fuel for equipment, and Aerial Platform provided lifts for the remedial welding work. (Handley Affidavit, ¶ 11). A more important entity to the substance of Randolph's claims is All Erection Company, which is located in Naperville. (*Id.*, ¶ 10). Finally, D & BR's home district is the Eastern District of Texas, and therefore Wisconsin is not clearly more convenient for it than Illinois. Venue in Illinois, conversely, is considerably more convenient for Randolph than Wisconsin.

The public interest factors also favor venue in this district. The factors that are considered in this analysis include "(1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (ii) the court's familiarity with applicable law; and (iii) the congestion of the respective court dockets and the prospects for an earlier trial." *APV North America, Inc.*, 2006 WL at *6. Neither of the parties is a Wisconsin corporation; Randolph, however, is a citizen of this district. The parties have chosen to have their subcontracts governed by Illinois law, and thus the second factor favors venue in this district. The docket of the Western District of Wisconsin is admittedly less congested than the docket of this district, but this factor alone is not sufficient to support a transfer of venue to Wisconsin. *See Pasulka*, 131 F. Supp.2d at 995.

### III.   Conclusion

The parties have substantial contacts with the Northern District of Illinois relating to the subcontracts at issue in this litigation. These contacts include the negotiations leading to the subcontracts, D & BR's decision to submit bids to Randolph in Illinois, D & BR's failure to pay Randolph amounts owing under the subcontracts, and the parties'

choice of Illinois law to govern their relationship. These contacts establish both specific personal jurisdiction over D & BR and proper venue in this district. Factors including the location of witnesses and necessary documents, as well as the convenience of the parties and the interests of justice, also are in favor of keeping venue in Illinois instead of Wisconsin.

WHEREFORE, for the reasons stated above, plaintiff William A. Randolph, Inc., respectfully requests that this Court enter an order denying the defendant's motions for transfer of venue, and providing such additional relief as may be just and appropriate.

Respectfully submitted,

**WILLIAM A. RANDOLPH, INC.**, an Illinois corporation

By:       /s/ Michael T. Graham
            One of Its Attorneys

Marc S. Porter (#3125509)
Jeff D. Harris (#3121786)
Michael T. Graham (#6280124)
Figliulo & Silverman, P.C.
10 S. LaSalle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-4600

**CERTIFICATE OF SERVICE**

The undersigned attorney states that he caused a copy of the attached:

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTIONS TO TRANSFER VENUE**

to be served upon counsel listed below via the United States District Court's Electronic Notification System on September 4, 2008.

/s/ Michael T. Graham

Counsel:

- **Gary William Griffith**
  ggriffith@manetti-griffith.com
- **Jeff Douglas Harris**
  jharris@fslegal.com
- **Mark D. Manetti**
  mmanetti@manetti-griffith.com
- **Marc S. Porter**
  mporter@fslegal.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **William A. Randolph, Inc., an Illinois corporation,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **D & BR Building Systems, Inc., a Texas corporation,** ) <br> ) <br> **Defendant.** ) | Case No. 08 CV 2257 <br><br> Judge Gottschall |

### AFFIDAVIT OF ERIC P. HANDLEY

Eric P. Handley, being first duly sworn under oath, states as follows:

1. I am over 18 years of age. I have personal knowledge of the matters set forth in this affidavit, and could testify to its contents if called upon to do so.

2. I am a Vice-President of William A. Randolph, Inc. ("Randolph"). Randolph's headquarters are in Gurnee, Illinois.

3. I was personally involved with the negotiations and performance of the subcontracts between Randolph and D & BR Building Systems, Inc. ("D & BR"). The subcontracts were for the installation of structural steel at a Wal-Mart and Sam's Club construction project in Janesville, Wisconsin (the "Projects"). Randolph was the general contractor on the Projects.

4. Randolph conducted all of the negotiations and pre-contract discussions relating to the subcontracts and the Projects by telephone from its offices in Gurnee. Randolph signed the subcontracts at its offices in Gurnee.

5. Randolph did not solicit D & BR for its work on the Projects. D & BR submitted bids for the subcontracts to Randolph in Illinois without solicitation.

6. All of Randolph's documents relating to the subcontracts and Projects are located at its headquarters in Gurnee. Although Randolph set up temporary offices in Wisconsin to manage the Projects, it closed those offices once the Projects were completed.

7. All of Randolph's employees with knowledge of the subcontracts and Projects are located in Illinois.

8. Randolph was required to repair, replace, and complete D & BR's work on the Projects. Randolph is entitled to charge D & BR for its expenses associated with the repair, replacement, and completion of its work pursuant to section 13 of the subcontracts. Despite Randolph's requests, D & BR did not pay Randolph the expenses associated with this work. Payment from D & BR was due to Randolph in Illinois.

9. Randolph hired two entities to repair and complete D & BR's work: T & K Helgesen, Inc., and All Erection Company, Inc. Although T & K Helgesen is located in Janesville, Wisconsin, All Erection Company is located in Naperville, Illinois.

10. Several other entities were involved with work on the Projects. Linde Gas provided gas for welding equipment. Combs & Associates, Inc., provided layout and surveying services, including for columns that D & BR installed improperly. Brown Oil Company, Inc., provided fuel for equipment and lifts. Aerial Work Platforms, Inc., provided lifts used in the remedial welding work. Although Randolph incurred expenses relating to these entities, they do not form the bulk of Randolph's claim for damages.

11. All of Randolph's communications with D & BR subsequent to completion of the Projects has been through its offices in Illinois.

12. Randolph chose to bring this lawsuit in the Northern District of Illinois, because it is substantially more convenient for Randolph to litigate in this district as opposed to the Western District of Wisconsin.

**FURTHER AFFIANT SAYETH NOT**

_____
Eric P. Handley
Vice-President
William A. Randolph, Inc.

Subscribed and Sworn to
before me this 4TH day of September, 2008.

_____
Notary Public

My Commission expires: 11/17/11

"OFFICIAL SEAL"
EDWARD A. SMITH
Notary Public - State of Illinois
My Commission Expires 11/17/11

3